IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **SIMPLEX HEALTHCARE, INC.,** )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>**MARKETLINKX DIRECT, INC., d/b/a** )<br>**MLX INTERACTIVE and MLX EXCHANGE,** )<br>**EZELL BROWN, and ABIEL SOCORRO,** )<br>)<br>    **Defendants.** ) | Case No. 3:10-cv-00988<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion to Dismiss filed by defendants Ezell Brown and Abiel Socorro (Docket No. 9), to which the plaintiff has filed a response (Docket No. 17). For the reasons discussed below, the defendants' motion will be denied.

## BACKGROUND

The plaintiff, Simplex Healthcare, Inc. ("Simplex"), is a Tennessee company that sells durable medical equipment directly to customers.[1] Defendant Marketlinkx Direct, Inc. ("MLX") is a Florida company that provides lead generation services to durable medical equipment suppliers.[2] In February 2009, Simplex began giving MLX "Insertion Orders" for specific leads, and, on May 11, 2010, Simplex and MLX entered into a Master Agreement for Lead Insertion

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiff's Complaint (Docket No. 1).

[2] A "lead" is "an individual's initial affirmative response to a promotional product campaign promoting products provided by Simplex or its affiliates." (Docket No. 1 ¶ 9.)

1

Orders (the "Agreement").

The plaintiff alleges that, in February 2008, MLX entered into the first of a series of agreements with Coastline Financial Services Group, LLC ("Coastline") that assigned and sold MLX's present and future accounts receivable to Coastline (collectively, the "Coastline Agreement"). Between March 2010 and June 2010, Simplex received four invoices from MLX, totaling $647,894. Despite the Coastline Agreement, MLX allegedly instructed Simplex to submit payment for the 2010 invoices directly to MLX. At the time, Simplex was allegedly unaware of MLX's arrangement with Coastline.

Defendant Abiel Socorro is the chief operating officer of MLX, and defendant Ezell Brown is the company's chairman and chief executive officer. The plaintiff alleges that, between November 2009 and June 2010, Socorro sent four emails to Simplex instructing it to wire invoice payments directly to MLX's bank account. In doing so, Socorro allegedly "act[ed] in concert with Brown, pursuant to Brown's instruction and with Brown's knowledge." (Docket No. 1 ¶ 13.)

In September 2010, Coastline's legal counsel sent Simplex a letter notifying Simplex of the Coastline Agreement and demanding that Simplex pay Coastline $647,894 for the four invoices. Simplex notified MLX of Coastline's letter; in response, Brown sent an email telling Simplex that MLX was "'working out a payment arrangement with Coastline' and that MLX was 'ultimately [] responsible for reimbursing Coastline' the $647,894.00." (*Id.* ¶ 14.) The plaintiff alleges that MLX never paid Coastline this money. Soon after, on September 21, 2010, Coastline filed suit against Simplex in Florida state court, seeking payment of the $647,894.

In October 2010, Simplex filed suit in this court against MLX, Socorro, and Brown, asserting that the defendants' actions constituted fraud and violated the Tennessee Consumer Protection Act. The Complaint further asserts claims for negligent misrepresentation and unjust enrichment against MLX. Presumably, the plaintiff has filed suit in this court – instead of filing a third-party complaint in the pending Florida action – because the Agreement between Simplex and MLX provides that "[a]ny claims or actions regarding or arising out of this Agreement must be brought exclusively in a court of competent jurisdiction sitting in Nashville, Tennessee." (Docket No. 1 ¶ 7.)

The two individual defendants, Socorro and Brown, have now filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction over them. They have submitted declarations stating that: (1) they are Florida residents; (2) any contacts or communications with Simplex were taken in their capacity as COO and CEO, respectively, of MLX; (3) they have never otherwise conducted business in Tennessee; (4) they have never traveled to Tennessee, advertised in Tennessee, or opened a bank account in Tennessee; and (5) defending an action in Tennessee would be burdensome and expensive. (Docket No. 10, Exs. 1-2.)

## ANALYSIS

**I.     Personal Jurisdiction Standard**

Rule 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson*, 428 F.3d

605, 615 (6th Cir. 2005). Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, provides that a Tennessee court may exercise jurisdiction over an out-of-state defendant on "[a]ny basis not inconsistent with the constitution of this state or of the United States." *Id.* § 20-2-214(6); *see also id.* § 20-2-225 (same). Accordingly, the long-arm statute has been consistently construed to extend to the limits of federal due process. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009); *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).

Due process requires that, for a court to exercise personal jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. Specific jurisdiction exists when a state exercises personal jurisdiction over a defendant in a suit that is related to the defendant's contacts with the forum. *Id.* General jurisdiction, on the other hand, exists when a defendant's contacts with the forum are "substantial" and "continuous and systematic," even if the contacts are unrelated to the suit at hand. *Id.*

Only specific jurisdiction is at issue here. In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit established a three-part test for determining whether the exercise of specific jurisdiction is proper:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in

4

> the forum state. Second, the cause of action must arise from the
> defendant's activities there. Finally, the acts of the defendant or
> consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of
> jurisdiction over the defendant reasonable.

*Id.* at 381, *quoted in, e.g.*, *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

A defendant may dispute prongs two and three of the *Mohasco* test, but the first prong is key, and whether jurisdiction is proper often boils down to whether the defendant has purposefully availed himself of the forum state. *Mohasco*, 401 F.2d at 381-82; *Air Prods.*, 503 F.3d at 550-51. A defendant "purposefully avails" himself "by engaging in activity that should provide 'fair warning' that he may have to defend a lawsuit there." *Youn*, 324 F.3d at 418 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Bridgeport*, 327 F.3d at 478 (describing purposeful availment as "something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state]" (quotation marks omitted) (alterations in original)); *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (considering whether the defendant's actions "had foreseeable effects in Tennessee and were directed at individuals in Tennessee"). The defendant himself must have created the contacts with the forum state. *Bridgeport*, 327 F.3d at 478. This "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Although the plaintiff bears the burden of establishing jurisdiction, in the absence of an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction."[3] *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quotation marks omitted). The plaintiff can do so by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state." *Id.* (quotation marks omitted). In analyzing the contacts, the court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff and will construe the facts in the light most favorable to the [plaintiff]." *Id.*

## II. Fiduciary Shield Doctrine

In their motion, the defendants primarily argue that Tennessee recognizes the "fiduciary shield" doctrine. (Docket No. 10 at 6-7.) This doctrine provides that, when an individual defendant is an officer of a corporation, a court may not exercise personal jurisdiction over the defendant based on actions taken in his or her corporate capacity. *See, e.g.*, *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). The defendants argue that, because all of their relevant alleged actions were taken on behalf of MLX, those actions cannot support personal jurisdiction over them as individuals.

In support of their argument, the defendants cite *Jowers v. Beck*, No. 1:09-cv-1131, 2010 U.S. Dist. LEXIS 8781 (W.D. Tenn. Feb. 2, 2010). The *Jowers* court applied the fiduciary shield doctrine and declined to exercise personal jurisdiction over an individual defendant whose contacts with Tennessee "occurred while he was acting in his capacity as President of [the

---

[3] Neither party has requested an evidentiary hearing on this motion.

corporate co-defendant]." *Id.* at *19. *Jowers* relied on *Boles v. National Development Co.*, 175 S.W.3d 226 (Tenn. Ct. App. 2005), for the proposition that, in Tennessee, "'[t]he fiduciary shield doctrine precludes jurisdiction over an individual acting exclusively as a corporate officer on behalf of a bona fide corporation.'" *Jowers*, 2010 U.S. Dist. LEXIS 8781, at *12-13 (quoting *Boles*, 175 S.W.3d at 251).

This court finds *Jowers*'s application of the fiduciary shield doctrine to be unpersuasive. No Tennessee state court has ever applied the doctrine to bar jurisdiction. Although *Boles* mentioned the fiduciary shield doctrine, the court in that case pierced the corporate veil and ultimately exercised jurisdiction over the individual defendant.[4] 175 S.W.3d at 251; *see also Sony/ATV Music Publ. LLC v. CAVS USA, Inc.*, No. 3:08-0265, 2009 U.S. Dist. LEXIS 62512, at *17-20 (M.D. Tenn. July 21, 2009) (noting the doctrine but exercising jurisdiction over an individual defendant).

Moreover, the Tennessee Supreme Court has never discussed or endorsed the fiduciary shield doctrine. Instead, it has repeatedly interpreted the state's long-arm statute to mean that a Tennessee court can exercise jurisdiction over a nonresident defendant "to the full limit permitted by [federal] due process."[5] *Gordon*, 300 S.W.3d at 645; *Masada Inv. Corp. v. Allen*,

---

[4] Furthermore, in discussing the fiduciary shield doctrine, *Boles* relied exclusively on *Stuart v. Spademan*, a Fifth Circuit case from 1985. *Boles*, 175 S.W.3d at 251 (citing *Stuart*, 772 F.2d at 1197). *Stuart* implies that the fiduciary shield doctrine is required by due process, but, as explained below, this contradicts both Supreme Court precedent and the current consensus among federal courts.

[5] Because "the due process requirements of the Constitution of Tennessee are co-extensive with those of the United States Constitution," a court applying the long-arm statute need only conduct a federal due process analysis. *Gordon*, 300 S.W.3d at 646; *see also Bridgeport*, 327 F.3d at 477.

7

697 S.W.2d 332, 334-35 (Tenn. 1985); *see also Boles*, 175 S.W.3d at 250 (stating that the long-arm statute "has been interpreted to extend to the limits of personal jurisdiction imposed by the Due Process Clause of the United States Constitution"). Indeed, this interpretation is compelled by the plain language of the statute, which authorizes jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. §§ 20-2-214(6), 20-2-225.

It is clear that the fiduciary shield doctrine, as it was applied in *Jowers*, is not required by due process. The Sixth Circuit has spoken directly on this point:

> While it is true that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, . . . the mere fact that the actions connecting [individual] defendants to the [forum] state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants.

*Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000) (quotation marks and citations omitted); *see also Flynn v. Greg Anthony Constr. Co.*, 95 Fed. Appx. 726, 740 (6th Cir. 2003) ("[P]ersonal jurisdiction is still possible over defendants whose actions connecting them to a particular state take place in their official, rather than in their personal, capacities.").

In fact, in a case pre-dating *Boles*, the District Court for the Middle District of Tennessee explicitly held that the fiduciary shield doctrine is inapplicable under Tennessee's long-arm statute, because the statute "is coextensive with the full reach of due process." *MCA Records v. Highland Music,* 844 F. Supp. 1201, 1203 (M.D. Tenn. 1993); *see also Hamilton Cnty. Emergency v. Orbacom Commc'ns Integrator Corp.*, No. 1:04-CV-7, 2005 WL 1513166, at *6 (E.D. Tenn. June 24, 2005) (citing *MCA* and declining to apply the fiduciary shield doctrine);

*Moore v. Weinstein Co. LLC*, No. 3:09-0166, 2010 U.S. Dist. LEXIS 112587, at *15 (M.D. Tenn. May 12, 2010) (citing *Balance Dynamics* and stating that a plaintiff may "establish personal jurisdiction over a corporate officer" if he or she "show[s] that the corporate officer was 'actively and personally involved in the conduct giving rise to the claim'"); *cf. Intera*, 428 F.3d at 616-17 (finding no personal jurisdiction under Tennessee's long-arm statute because the individual defendants had *not* "transacted business in Tennessee in their . . . official capacities as corporate officers").

U.S. Supreme Court precedent supports this conclusion. The case of *Calder v. Jones*, 465 U.S. 783 (1984), involved two individual defendants who were, respectively, a reporter and the president of a newspaper that published an allegedly libelous article. *Id.* at 785-86. The Court found that the defendants' actions in writing, editing, and publishing the article were enough to support personal jurisdiction over them, even though they took those actions pursuant to their employment. *Id.* at 790-91. Although individual defendants' "contacts with [the forum state] are not to be judged according to their employer's activities there[,] . . . their status as employees does not somehow insulate them from jurisdiction." *Id.* at 790. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), a personal-jurisdiction case that was decided the same day as *Calder*, the Court characterized this holding as "reject[ing] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Id.* at 781 n.13.

In light of these two Supreme Court cases, there is a broad consensus among federal courts outside the Sixth Circuit that due process does not require the application of the fiduciary

9

shield doctrine. *See, e.g.*, *SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (citing *Calder* and stating that "employees of a corporation that is subject to the personal jurisdiction . . . may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation"); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521-22 (9th Cir. 1989) ("[T]he Supreme Court appears to have signalled that the question whether there exists a jurisdictional corporate shield is not [] an issue [of constitutional dimensions]."); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987) ("[T]he fiduciary shield doctrine is not available where the forum state's long-arm statute is 'coextensive with the full reach of due process.'"); *Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 602 (E.D. Pa. 2007) ("[T]he Supreme Court appears to have rejected the proposition that [the fiduciary shield] doctrine is a requirement of federal due process."); *Int'l Adm'rs, Inc. v. Pettigrew*, 430 F. Supp. 2d 890, 899 (S.D. Iowa 2006) ("Supreme Court jurisprudence has made clear that . . . the contacts of each defendant must be assessed individually, [and] that one's corporate status [does not] automatically place[] that person beyond the court's jurisdiction."); *Me. Rubber Int'l v. Envtl. Mgmt. Group, Inc.*, 295 F. Supp. 2d 125, 128 (D. Me. 2003) ("[W]hatever equitable attractions the fiduciary shield doctrine may have, . . . it is not constitutionally required . . . ."); *Kelley v. CINAR Corp. (In re CINAR Corp. Sec. Litig.)*, 186 F. Supp. 2d 279, 323 (E.D.N.Y. 2002) ("[*Calder* and *Keeton*] reject outright the notion of a 'fiduciary shield' that would preclude the exercise of jurisdiction as a matter of due process."); *see also Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp. 290, 294-95 (S.D. Ind. 1993) (explaining "the questionable origins of the [fiduciary shield] doctrine, the lack of articulation

and analysis accompanying application of the doctrine, [and] the fact that the doctrine served to obfuscate application of traditional due process analysis").

Because the Tennessee Supreme Court has clearly and repeatedly held that the state's long-arm statute extends to the limits of federal due process, and because due process does not require the fiduciary shield doctrine, that doctrine does not limit this court's jurisdiction. Accordingly, defendants Socorro and Brown cannot escape personal jurisdiction merely by arguing that all of their Tennessee contacts were made pursuant to their employment at MLX.

### III. Application of the *Mohasco* Test

Consequently, the court will examine whether the individual defendants' actions can support specific jurisdiction, without regard to whether those actions were taken in an individual or a corporate capacity.[6] The court will address the three prongs of the *Mohasco* test in turn.

First, there is little doubt that both defendants purposefully availed themselves of the state when they sent emails to a Tennessee company in furtherance of an allegedly fraudulent scheme. The plaintiff alleges that Socorro sent four emails, at Brown's instruction, directing the plaintiff to pay the invoice money directly to MLX, even though the defendants knew that the money should have been paid to Coastline. The plaintiff further alleges that Brown emailed the plaintiff and stated that MLX planned to forward Simplex's payment to Coastline, even though MLX never intended to do so. These allegedly fraudulent communications are enough to show purposeful availment. *See Neal*, 270 F.3d at 332 (finding purposeful availment when the

---

[6] The defendants do not seem to dispute that jurisdiction is proper if all of the actions alleged in the Complaint are considered. Instead, their brief is premised entirely on the argument that their alleged contacts should be disregarded pursuant to the fiduciary shield doctrine.

11

defendant allegedly "defrauded [the plaintiffs] in phone calls and faxes directed to plaintiffs or their agents in Tennessee"). "When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment." *Id.*

Second, the plaintiff's fraud claim arises directly from the individual defendants' allegedly fraudulent communications. Third, an exercise of jurisdiction here is reasonable. When the first two prongs of the *Mohasco* test are met, the reasonableness prong is presumed to be satisfied, except in "unusual cases." *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co.*, 196 Fed. Appx. 366, 372 (6th Cir. 2006) (citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)); *Air Prods.*, 503 F.3d at 554. Nothing indicates that this is an unusual case.

Accordingly, the court can exercise specific jurisdiction over defendants Socorro and Brown.

## CONCLUSION

For all of the reasons discussed above, the court will deny the defendants' Motion to Dismiss.

An appropriate order will enter.

                                                              _____
                                                              ALETA A. TRAUGER
                                                              United States District Judge